IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:24-CV-36-BM

| | |
|---|---|
| DAVID SCHAIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FRANK BISIGNANO, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **ORDER** |

Plaintiff David Schain ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). This matter is before the court on Plaintiff's brief [DE-12] ("Pl.'s Brief") seeking judgment in his favor, Defendant's responsive brief [DE-14] ("Def.'s Brief") in opposition, and Plaintiff's reply brief [DE-15] ("Pl.'s Reply"). The parties have fully briefed this matter pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The parties have consented to entry of final judgment by a United States magistrate judge under 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fourth Circuit. Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, the court denies Plaintiff's brief [DE-12], allows Defendant's brief [DE-14], and affirms the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on September 11, 2020, and filed an application for a period of disability and SSI on May 17, 2023, in each case

alleging disability beginning September 27, 2019.  Transcript of Proceedings ("Tr.") 17, 116, 300-01.  Plaintiff's DIB claim was denied initially.  Tr. 116-26, 169-78.  Plaintiff filed a request for reconsideration (Tr. 179-80), and was denied upon reconsideration on April 20, 2022 (Tr. 138, 181-90).  On April 21, 2022, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ").  Tr. 191-93.  A hearing before the ALJ was held on June 21, 2023, at which Plaintiff, represented by a non-attorney representative, and a vocational expert ("VE") appeared and testified.  Tr. 42-85.  Plaintiff's mother, Patricia Schain, also appeared and testified during the hearing.  Tr. 69-75.  On September 7, 2023, the ALJ issued a decision denying Plaintiff's request for benefits.  Tr. 14-41.

On September 21, 2023, Plaintiff requested a review of the ALJ's decision by the Appeals Council.  Tr. 277-79.  On June 17, 2024, the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II.  STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more

than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

3

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and §§ 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 36. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since September 27, 2019, the alleged onset date. Tr. 19.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: generalized anxiety disorder with panic attacks; depressive disorder; opioid dependence, in remission on suboxone; cannabis use disorder, in recent self-reported remission; left foot hallux varus, status post left bunionectomy, second digit hammertoe correction, and tendon transfer; degenerative disc disease; fibromyalgia; and left leg peroneal nerve mononeuropathy. Tr. 20. The ALJ also found Plaintiff had the following non-severe impairments: inflammatory bowel syndrome with primary constipation; internal hemorrhoids; and mild benign prostate enlargement. Tr. 20.

However, at step three, the ALJ concluded these impairments both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20-22.

4

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. Tr. 22-23.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform light work[1] with the following limitations:

> [Plaintiff] can sit for six hours out of an eight-hour workday, stand and/or walk for six hours out of an eight-hour workday, and lift and carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] can perform occasional postural movements, but never climbing ladders, ropes, or scaffolds. [Plaintiff] must avoid all exposure to hazards of unprotected heights or moving machinery. [Plaintiff] is limited to the ability to understand, remember, and carry out simple instructions and some detailed instructions and use judgment to make such tasks related [sic] work decisions; can sustain concentration, attention, and pace sufficient enough to carry out those instructions for two-hour intervals over the course of a typical eight-hour workday; can work in occupations requiring interactions with coworkers, supervisors, and the public; and can adapt to routine and no more than occasional changes in work setting or work processes involving no fast paced assembly line work.

Tr. 24.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id*. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id*.

In making this assessment, the ALJ found Plaintiff's statements about his limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 25.

At step four, the ALJ concluded Plaintiff did not have past relevant work. Tr. 34 Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy. Tr. 34-36.

## V. DISCUSSION

Plaintiff contends that the ALJ's RFC does not account for the moderate limitations in concentration, persistence, and pace set forth in the psychiatric review technique finding. Pl.'s Brief [DE-12] at 1. The Commissioner counters that "[t]he RFC describes the most a claimant can do despite his limitations" and argues that "the ALJ here provided a more than adequate discussion, supported by substantial evidence, to indicate how the RFC limitations accounted for Plaintiff's mental limitations." Def.'s Brief [DE-14] at 5, 8.

Concentration, persistence, and pace "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." Listing 12.00C3. It is one of four broad functional areas assessed using the special technique for mental impairments under the Regulations. *See* 20 C.F.R. § 404.1520a, 416.920a.

In *Mascio v. Colvin*, the Fourth Circuit held "that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d 632, 638 (4th Cir. 2015) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). Specifically, the court found that "the ability to perform simple tasks differs from the ability to stay on task[,]" and "[o]nly the latter

6

limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Yet, the Fourth Circuit does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). Instead, the Fourth Circuit notes "that 'an ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." *Id.* (quoting *Mascio*, 780 F.3d at 638) (alteration in original). "For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would [be] appropriate to exclude it from the hypothetical tendered to the vocational expert." *Id.* (alterations in original) (citations omitted). Without such explanation by the ALJ, remand is required. *Williams v. Saul*, No. 4:20-CV-92-FL, 2021 WL 3399820, at *4 (E.D.N.C. June 16, 2021) (citing *Mascio*, 780 F.3d at 638); *see also Shannon R. v. Kijakazi*, 2022 WL 636638, at *9–10 (W.D. Va. Mar. 4, 2022) (finding that the ALJ "was required either to include specific work-related restrictions within her RFC finding to accommodate for such 'moderate' [concentration, persistence, and maintaining pace] limits, or to explain why such limits did not translate into [the claimant's] RFC."); and *Linda W. v. Saul*, No. 7:20-cv-27, 2021 WL 930274, at *4–6 (W.D. Va. Feb. 22, 2021) ("[T]he ALJ failed to draw an explicit conclusion or satisfactorily explain how [the claimant's] [moderate limitations in maintaining concentration, persistence, and pace] affect her ability to perform job-related tasks for a full eight-hour workday.").

When the ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace, she specifically noted Plaintiff exhibited "[t]rouble adhering to tasks [in] September 2020 . . . [but that Plaintiff's] treating providers have routinely found normal attention and concentration on his mental status examinations . . . He exhibited adequate attention and

7

concentration during his January 2022 consultative examination, though he had some difficulty performing serial threes." Tr. 23.

As noted above, with respect to Plaintiff's mental impairments, the ALJ provided the following limitations in the RFC:

> [Plaintiff] is limited to the ability to understand, remember, and carry out simple instructions and some detailed instructions and use judgment to make such tasks related [sic] work decisions; can sustain concentration, attention, and pace sufficient enough to carry out those instructions for two-hour intervals over the course of a typical eight-hour workday; can work in occupations requiring interactions with coworkers, supervisors, and the public; and can adapt to routine and no more than occasional changes in work setting or work processes involving no fast paced assembly line work.

Tr. 24.

Plaintiff argues that the limitations provided by the ALJ are insufficient in that they only provide (i) a limitation to "simple" tasks, which was found insufficient under *Mascio*, and (ii) a limitation to two-hour working periods, which is allegedly meaningless, "because all jobs for unimpaired workers allow for breaks following two-hour working periods." Pl.'s Brief [DE-12] at 7. With respect to the two-hour working periods, Plaintiff cites a line of cases from the District of Maryland finding that "limiting [a plaintiff] to two hours of concentration before requiring a break—has been similarly rejected by [the federal District Court of Maryland] as insufficient to account for a claimant's moderate limitations in concentration, persistence, and pace because breaks at two-hour intervals are customary even for those without limitations." *See id.* at 8 (quoting *Chad H. v. Kijakazi*, No. CV 22-1241-BAH, 2023 WL 2837524, at *3 (D. Md. Apr. 6, 2023)). In *Chad H.*, the court additionally found that an RFC limiting the claimant to "concentrate[ion] in the workplace for two hours before requiring a break," combined with a limitation "to performing simple, routine tasks" was insufficient to accommodate a moderate

8

limitation in concentrating, persisting, or maintaining pace. No. CV 22-1241-BAH, 2023 WL 2837524, at *3 (D. Md. Apr. 6, 2023).

This court has previously noted that "other courts in this circuit, including this court, have found that limitations to two-hour work intervals can provide meaningful context for the accommodation of a moderate limitation in maintaining [concentration, persistence, or pace] when combined with other relevant limitations." *See McNeill v. O'Malley*, No. 5:23-CV-00346-M-BM, 2024 WL 4500708, at *7 (E.D.N.C. Aug. 19, 2024), *report and recommendation adopted*, No. 5:23-CV-00346-M-BM, 2024 WL 4326814 (E.D.N.C. Sept. 27, 2024) (citing *Lamm v. Kijakazi*, No. 5:22-CV-138-D, 2023 WL 6167151, at *6 (E.D.N.C. Aug. 18, 2023), *report and recommendation adopted*, No. 5:22-CV-138-D, 2023 WL 6164403 (E.D.N.C. Sept. 20, 2023); *Simmons v. Berryhill*, No. 5:17-CV-00004-D, 2018 WL 577243, at *7 (E.D.N.C. Jan. 10, 2018), *report and recommendation adopted*, No. 5:17-CV-4-D, 2018 WL 576845 (E.D.N.C. Jan. 26, 2018); *Tracy C. v. O'Malley*, No. 1:23CV198, 2024 WL 1286484, at *8 (M.D.N.C. Mar. 26, 2024); and *Sandra G. v. O'Malley*, No. 1:23CV6, 2024 WL 1119550, at *5 (M.D.N.C. Mar. 14, 2024)).

In his reply, Plaintiff argues that here while the limitation to simple, and some detailed, instruction may have accommodated "the level of complexity of tasks," the limitation to two-hour work intervals was the only limitation relevant to Plaintiff's ability to "*stay on task*" and therefore failed to satisfy the requirements of *Mascio*. Pl.'s Reply [DE-15] at 2. The court disagrees.

Here, the ALJ also accommodates Plaintiff's ability to concentrate, persist, and maintain pace by finding that Plaintiff can only "adapt to routine and no more than occasional changes in work setting or work processes involving no fast paced assembly line work." Tr. 24. Notably, there was no restriction of fast paced assembly line work in *Chad H*. *See* No. CV 22-1241-BAH, 2023 WL 2837524, at *2 (D. Md. Apr. 6, 2023). The court makes no findings on whether

9

limitations in the frequency of changes in work setting or work processes alone would generally be appropriate to accommodate an ability to stay on task. Yet in the context of this Plaintiff with the other limitations discussed herein, there is substantial evidence to support that they are. The Fourth Circuit's holding in *Shinaberry* requires that the court examine limitations to accommodate a moderate limitation in concentrating, persisting, or maintaining pace in the context of the specific Plaintiff and specific ALJ decision. *See* 952 F.3d 113, 121 (4th Cir. 2020).

Here, Plaintiff appears to argue that a primary reason for his limitations in the ability to stay on task is his history of panic attacks. Pl.'s Brief [DE-12] at 9. In her decision, the ALJ noted that Plaintiff identified "changes in schedule or routine . . . as triggers for his panic attacks." Tr. 24; *see also* Tr. 1401 (a treating counselor, Andrea Facci, Ph.D. ("Dr. Facci") noting Plaintiff's "[p]anic attacks are usually triggered by any perception of routine change, uncertainty, or vulnerability."). Accordingly, there is at least substantial evidence to support the ALJ's limitations concerning the frequency of routine changes as they relate to Plaintiff's moderate limitations in concentrating, persisting, or maintaining pace.

Plaintiff next argues that the challenges he experienced while previously working at a children's store and Starbucks evidence why the RFC does not accommodate his moderate limitations in concentrating, persisting, or maintaining pace. Pl.'s Brief [DE-12] at 9. Plaintiff testified at the administrative hearing before the ALJ that at previous jobs he would miss work "at least once a week" (Tr. 61), and his Starbucks manager allowed him "extra breaks and extra time [of between ten to thirty minutes] when [he] needed it" in response to panic attacks (Tr. 64). Plaintiff estimated that he "was probably missing ten days" (Tr. 65) per month as a result of his mental health symptoms.

Even crediting this testimony, one can still find that the RFC is supported by substantial

10

evidence. Specifically, the ALJ is entitled to consider any improvement in Plaintiff's condition and how the limitations provided in the RFC may accommodate the Plaintiff's impairments during the relevant time periods. Here, the ALJ noted despite "some periods of symptoms exacerbation, typically due to life stressors or his lower extremity surgeries," Plaintiff "reported gradual improvement in his anxiety and depression." Tr. 27. While Plaintiff "continued to have significant difficulty with motivation to find work," Plaintiff's mental health provider noted that Plaintiff's "impairments were stable and that his anxiety, which had been his biggest obstacle, was 'not debilitating.'" *Id.*

Plaintiff argues that the evidence "shows Plaintiff's depression, anxiety, and panic attacks prevented him from maintaining a level of off-task time and absences that would be tolerable to the typical employer." [DE-12] at 11. Certain early treatment notes record that Plaintiff did not feel he was mentally or physically able to work (Tr. 1037), and Dr. Facci opined in May 2023 that Plaintiff was "unable to do simple routine repetitive tasks on a sustained basis without a highly supportive environment that could work with his limitations." Tr. 1402.

As cited by the ALJ (Tr. 28), a mental health treatment counselor, whom Plaintiff had seen for multiple years, repeatedly discussed the prospect of Plaintiff getting a job. *See* Tr. 1047 (mental noting at a December 16, 2021 counseling appointment "getting a job is something we have talked about in nearly every session over the course of the past year"). Indeed, his counselor set a goal for Plaintiff to "possibly find[] other employment that is not as physically taxing." *Id.* Notwithstanding Plaintiff's failure to act on such attempts, such ongoing discussions suggest both Plaintiff and at least one treating counselor believed he would be able to do so.

The ALJ also discussed Dr. Facci's opinion and her reasons for discounting it. The ALJ found that the opinion was not consistent:

11

> with the findings of the consultative examination, in which [Plaintiff] was able to concentrate and persist to complete the simple tasks asked of him; the unremarkable examination findings throughout the record; or the findings of his treating therapist from August 2019 through March 2022, who repeatedly urged [Plaintiff] to apply for work.

*See* Tr. 29.

While Plaintiff's anxiety appears to have contributed to his hesitancy to apply for a job (Tr. 809 (noting that Plaintiff "seems to be too anxious to even apply" for a job), there are other examples in the record of Plaintiff successfully overcoming his anxiety with positive effects. While Plaintiff testified that work would trigger his panic attacks, he also testified that leaving home would induce intense anxiety. Tr. 28. Medical records indicate that he was repeatedly able to overcome this challenge. *Id.* (ALJ noting that Plaintiff "reported periods of sustained improvement in his symptoms to the extent that he was better able to establish and maintain relationships with others and leave the home without significant anxiety"); Tr. 1034 (Plaintiff reporting at September 29, 2021 counseling appointment that "he is trying to spend time with friends and doing activities outside for self-care"); Tr. 1176 (noting for March 13, 2023 office visit that Plaintiff is "getting out with friends, and is feeling better.").

Plaintiff contends that the ALJ failed to consider the difference between Plaintiff's behavior in a clinical environment versus a work environment in establishing RFC limitations in concentrating, persisting, and maintaining pace. Pl.'s Brief [DE-12] at 10 ("Plaintiff's attention and concentration in a clinical environment was not necessarily indicative of his abilities in the work environment.") (citing Tr. 22). This argument is unpersuasive for two reasons. First, the state agency consultants were able to consider Plaintiff's clinical results in the context of his other medical records when making their assessments, and also found a moderate limitation in concentrating, persisting, or maintaining pace. *See* Tr. 118-21; 128-31, 135; *see also* Tr. 30 (ALJ

12

finding the stage agency consultants "generally persuasive" because they "offered support for their findings, citing objective findings and clinical signs from the record as constituted at the time their findings were made."). Second, there are multiple treatment records, which indicate that Plaintiff repeatedly reported the ability to effectively manage his symptoms outside of a clinical environment.[2] *See* Tr. 28 (ALJ noting that "the record reflects improvement in [Plaintiff's] anxiety to the extent that it was 'not debilitating' in July 2021 and that he no longer experienced significant panic or depression by February 2022"); Tr. 1350 (noting for a December 31, 2020 office visit "[a]nxiety stable on current regimen"); Tr. 1284 (noting for a June 28, 2021 office visit that "[p]atient is doing well with depression and anxiety" and that "insomnia and panic . . . occur occasionally" but that "[t]he severity of symptoms is moderate."); Tr. 1053 (noting a February 15, 2022 counseling appointment during which Plaintiff states "he doesn't have depressive symptoms or panic at high levels"); Tr. 1057-58 (noting at March 11, 2022 counseling appointment that Plaintiff "had concerns that his anxiety would spike, but this has not happened"). While Plaintiff reported to a consultative examiner that he "had a panic attack [the morning of his appointment] around 4 am until [he] left and got with [his] mom . . . [h]is mood and affect appear[ed] unremarkable." Tr. 832. At the same appointment the consultative examiner found that Plaintiff "appear[ed] able to understand, retain and follow instructions to perform simple, routine and

---

[2] It is true that certain medical records support Plaintiff's allegations of anxiety, particularly earlier in the record. Tr. 1074 (noting for September 23, 2021 office visit that Plaintiff has symptoms of "nervous/anxious behavior and panic" that "[s]ymptoms occur most days [and are] severe"); Tr. 1233 (noting for September 13, 2022 office visit that Plaintiff was "visibly anxious and shaking"). The ALJ acknowledges that Plaintiff's "mental health treatment notes reflect a baseline of significant anxiety and panic," as well as "acute periods of increased anxiety" (Tr. 28), and found Plaintiff to have the severe impairment of generalized anxiety disorder with panic attacks. Nevertheless, the ALJ noted numerous factors tempering these reports, including that Plaintiff reported "periods of sustained improvement in his symptoms to the extent that he was better able to establish and maintain relationships with others and leave the home without significant anxiety." *Id.* The ALJ also noted that Plaintiff "has been able to maintain his own dwelling, drive an automobile to work and to visit friends, shop for necessities, and use a computer or other electronic device for his online therapy sessions." *Id.*

13

Case 2:24-cv-00036-BM    Document 16    Filed 09/23/25    Page 13 of 14

repetitive tasks and to maintain concentration, persistence, and pace[ and] does not appear to be an emotionally fragile individual and is not likely to struggle with negotiating simple work-related stressors." Tr. 834. The ALJ cites this opinion in her decision and found it to be persuasive. *See* Tr. 29.

In sum, while Plaintiff's mental impairments create significant limitations for him, the ALJ's RFC to accommodate such symptoms is supported by substantial evidence and is adequately explained. The court therefore does not find that remand is necessary in this case.

## VI. CONCLUSION

For the reasons stated above, the court denies Plaintiff's brief [DE-12], allows Defendant's brief [DE-14], and AFFIRMS the final decision of the Commissioner.

SO ORDERED, this 23rd day of September, 2025.

_____
Brian S. Meyers
United States Magistrate Judge